**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorney for Defendant*
Clearview AI, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN RENDEROS, VALERIA THAIS, SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, and NORCAL RESIST FUND,

Plaintiffs,

v.

CLEARVIEW AI, INC., and DOES 1-10

Defendant.

Case No.

**CLEARVIEW AI, INC.'S NOTICE OF REMOVAL**

[County of Alameda Superior Court Case No. RG21091138]

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Clearview AI, Inc. ("Clearview") hereby effects the removal of this action from the Superior Court of the State of California for the County of Alameda ("County of Alameda Superior Court") to the United States District Court for the Northern District of California. Removal is proper under 28 U.S.C. § 1332(a) because the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000. Venue is proper in this Court because it is the "district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a).

**FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS**

1. Plaintiffs filed this lawsuit in County of Alameda Superior Court on March 9, 2021. Clearview was served with the Summons and Complaint on March 26, 2021. *See* Ex. 1 (State Court Complaint and Summons).

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the state court case file is attached to this Notice of Removal and is incorporated by reference herein. The file includes all process, pleadings, motions, and orders filed in this case, including the Summons and Complaint (Ex. 1) and all other documents filed in the state court (Ex. 2).

3. Plaintiffs allege that Clearview illegally scrapes images of millions of unsuspecting individuals from the Internet, extracts biometric information from these individuals, and then uses artificial intelligence technology to analyze the biometric information and create a "faceprint" of these individuals. This, in turn, allows Clearview users to upload a "probe photo" to the Clearview mobile application and learn private information about the person in the probe photo, which Plaintiffs allege permanently deprives individuals of their anonymity and privacy and disproportionately misidentifies people of color. *See* Ex. A, ¶¶ 24–35.

4. Plaintiffs allege three causes of action against Clearview for common law appropriation of likeness, violation of Article 1, Section 1 of the California Constitution, and violation of California's Unfair Competition Law. *See* Ex. 1, ¶¶ 69–83.

5. Plaintiffs seek injunctive relief, compensatory damages (including emotional distress

damages), punitive damages, attorneys' fees, and any other relief as equity and justice may require. *See* Ex. 1, Prayer for Relief.

**REMOVAL IS PROPER UNDER 28 U.S.C. § 1332(a)**

6. Pursuant to 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all cases where the amount in controversy exceeds $75,000 and is between "citizens of different States." Under 28 U.S.C. § 1441(a), any such action may be removed to the district court for the district and division embracing the place where the action is pending.

**There is Complete Diversity of Citizenship**

7. Because Plaintiffs and Defendant are citizens of different states, there is complete diversity of citizenship under 28 U.S.C. § 1332(a)(1).

8. The individual Plaintiffs are citizens of California. According to the Complaint, Plaintiffs Renderos, Suárez, and Knox are residents of Alameda County, and Plaintiff Maldonado is a resident of Oakland. Ex. 1, ¶¶ 11–14.

9. The corporate Plaintiffs, Nor Cal Resist Fund and Mijente Support Committee, are citizens of California and Arizona, respectively. According to the complaint, Plaintiff Nor Cal Resist Fund is a California Corporation, and Plaintiff Mijente Support Committee is an Arizona Corporation. Ex. 1, ¶¶ 15–16.

10. Clearview is a citizen of Delaware and New York. Clearview is a Delaware corporation with its principal place of business in New York. Ex. 1, ¶¶ 18.

**The Amount in Controversy Exceeds $75,000**

11. Until and unless a plaintiff challenges removal, an assessment of the amount in controversy is based solely on the allegations of the complaint, rather than "evidentiary submissions." *Dart Cherokee Basin Operating Co v. Owens*, 574 U.S. 81, 84 (2014). In other words, a defendant need not offer evidence to substantiate the amount in controversy; rather, a "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 89. "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*; *see also LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)

(holding that a "preponderance of the evidence" standard applies only *after* "a defendant's assertion of the amount in controversy is challenged") (citations and internal quotation marks omitted).

12. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). To satisfy the amount in controversy requirement, a defendant must establish only that "the potential damages could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)). The "amount in controversy is not a prospective assessment of [a] defendant's liability"; instead, "it is the amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (citations and internal quotation marks omitted).

13. In other words, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn*, 536 F. Supp. 2d at 1205; *see also, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("[T]he amount in controversy is the 'amount *at stake* in the underlying litigation.' 'Amount at stake' does not mean likely or probable liability; rather it refers to *possible* liability.") (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)) (second emphasis added); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy.") (citation omitted). For that reason, the Ninth Circuit has made clear that a court cannot "delve into the merits" or "conduct a fact-based analysis of the merits" in assessing the amount in controversy. *Greene*, 965 F.3d at 774.

14. Without conceding any merit to Plaintiffs' allegations, causes of action, claim for injunctive relief, or claims for compensatory damages, punitive damages, or attorney's fees, the amount placed in controversy by Plaintiffs' complaint satisfies 28 U.S.C. § 1332(a)'s jurisdictional threshold.

15. Although Plaintiffs' complaint does not specify a precise amount of damages, Plaintiffs seek to "enjoin [Clearview] from illegally acquiring, storing, and selling their likenesses, and the likenesses of millions of Californians." Ex. 1, ¶ 1. "In actions seeking declaratory or injunctive relief, it is well

established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)); *see also Rose v. J.P. Morgan Chase, N.A.*, No. 12-225, 2012 WL 892282, at *2–3 (E.D. Cal. Mar. 14, 2012) (denying motion to remand where value of injunctive relief sought exceeded the amount in controversy).

16. In multi-plaintiff cases like this one, the appropriate method of valuing the cost of compliance with an injunction is to look at the "cost to the defendant[] of an injunction running in favor of one plaintiff." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001). Here, the Complaint seeks public injunctive relief prohibiting Clearview from "acquiring, storing, and selling . . . the likenesses of millions of Californians." Ex. 1, ¶ 1. This relief may be (and is being) sought by *each Plaintiff* pursuant to their UCL claims. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (explaining that under the UCL private plaintiffs may seek public injunctive relief, that is "relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public") (internal quotation marks omitted).

17. The amount in controversy therefore includes "the cost [to Clearview] of complying with [the] requested injunctive relief." *Gen. Dentistry for Kids, LLC v. Kool Smiles, P.C.*, 379 F. App'x 634, 635 (9th Cir. 2010). Here, such compliance could only be achieved through a complete overhaul of Clearview's business model, which according to the Complaint entails the "gather[ing], cop[ying], and sav[ing]" of the likenesses of "Plaintiffs and all California residents" and the use of such likenesses in a "facial recognition technology" (Ex. 1 ¶¶ 3-5) — precisely what each Plaintiff seeks to enjoin. The cost to Clearview of such overhaul would easily exceed $75,000 by many multiples. *See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) ("State Farm has shown that its costs of compliance running to any single Plaintiff or putative class member would exceed $75,000 because the requested relief would require it to make significant changes to its business practices . . . . Because the compliance cost to any single plaintiff exceeds the requisite amount in controversy, the jurisdictional threshold is met and the district court properly exercised subject matter jurisdiction over this case."). The requested injunctive relief alone thus satisfies the jurisdictional minimum.

18. In addition to injunctive relief, each Plaintiff seeks compensatory damages for the alleged "mental anguish" they have suffered "as a result of the invasion of their privacy," including "their fear that they will be retaliated against for their constitutionally protected views regarding policing and immigrating," their fear of "surveillance of their immigrant and people of color communicated," and their fear of "being targeted for arrest and deportation." Ex. 1, ¶¶ 64-65; *see also id.* ¶ 80 (alleging that Clearview's actions have "place[d] Plaintiffs' and Plaintiffs' members lives and livelihood in danger"). The potential emotional distress damages for each Plaintiff could come close to, or even exceed, $75,000. *See Fairfield v. American Photocopy etc. Co.*, 138 Cal.App.2d 82, 89 (1986) ("One whose right of privacy is unlawfully invaded is entitled to recover substantial damages, although the only damages suffered by him resulted from mental anguish."); *see also Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1484 (1986) ("[D]amages flowing from [invasion of privacy] logically would include an award for mental suffering and anguish").

19. Indeed, courts have awarded and affirmed emotional distress damages far exceeding $75,000 where plaintiffs alleged emotional distress arose from similar allegations of misappropriation of likeness, invasion of privacy, and fear of retaliation. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1103 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (affirming an award of $200,000 for injury to plaintiff's "peace, happiness and feelings" in a voice misappropriation action); *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 821 (1999) (affirming an award of over $450,000 for emotional distress damages based on evidence that retaliation at work had, among other thing, caused the plaintiff to fear physical harm from his coworker); *Corey v. Pierce County*, 2008 WL 5100876 (2008) (awarding $750,000 in noneconomic damages for the emotional distress plaintiff suffered after her boss "invaded her privacy by disseminating information to the public improperly"); *see also Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) (potential emotional distress damages sufficient to establish the jurisdictional amount in controversy).

20. Plaintiffs also seek punitive damages, *see* Ex. 1 at Prayer for Relief, which are properly considered in calculating the amount in controversy. *See, e.g., Bell-Sparrow v. Wiltz*, No. 12-2782, 2014 WL 2927354, at *4–5 (N.D. Cal. June 27, 2014) (including potential punitive damages award in

determining amount in controversy); *Lee v. Equifax Info. Servs., LLC*, No. 13-4302, 2013 WL 6627755, at *4 (N.D. Cal. Dec. 16, 2013) (similar); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (similar).

21. In assessing the amount in controversy, the Ninth Circuit does not require a "likelihood" that the plaintiff will "prevail[] on the punitive damages claim," and it has directed district courts not to inquire into the merits of the punitive damages claim or whether the case is factually analogous to other cases in which courts have awarded punitive damages. *Greene*, 965 F.3d at 771–73 (holding that district court erred in requiring Harley-Davidson to "compar[e] and analogiz[e] the underlying factual allegations" to those in other cases where the courts awarded punitive damages).[1] Further, courts have noted that punitive damages awards "can be substantial." *Hurd v. Am. Income Life Ins.*, No. 13-5205, 2013 WL 5575073, at *6–7 (C.D. Cal. Oct. 10, 2013).

22. Plaintiffs also seek to recover attorneys' fees, which may be available pursuant to Plaintiffs' UCL claim. *See* Ex. 1, Prayer for Relief; *see also Benson v. S. California Auto Sales, Inc.*, 239 Cal. App. 4th 1198, 1208 & n.5 (2015) (noting that the UCL does not authorize attorneys' fees, but "[a] plaintiff can seek attorney fees after prevailing under these statutes under Code of Civil Procedure section 1021.5, the private attorney general statute"). For purposes of assessing the amount in controversy, the Court is not limited to considering fees incurred at the time of removal; rather, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that the amount in controversy includes fees likely to be incurred after removal); *see also Bayol v. Zipcar, Inc.*, No. 14-2483, 2015 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015) ("The amount in controversy can include . . . attorneys' fees."). Here, each Plaintiff's attorney's fees could be significant if Plaintiffs pursue this litigation through trial.

23. When aggregated, the injunctive relief, emotional distress damages, and punitive damages demanded by any one Plaintiff individually, combined with the amount of attorneys' fees Plaintiffs'

---

[1] Under California law, punitive damages are available only upon a showing of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Clearview denies that its conduct is in any way oppressive, fraudulent, or malicious or that it is liable for punitive damages.

counsel may recover for any one Plaintiff individually, exceeds the $75,000 threshold under 28 U.S.C. § 1332(a).

**REMOVAL IS TIMELY**

24. Under 28 U.S.C. § 1446(b), notice of removal of a civil action must be filed within thirty (30) days of the defendant's receipt of service of the summons and the Complaint. Clearview was served on March 26, 2021. This Notice of Removal is accordingly timely.

**OTHER REQUIREMENTS FOR REMOVAL ARE MET**

25. Clearview has not had any attorneys enter an appearance, file any responsive pleadings, or file any papers responding to the Complaint in the state court.

26. Clearview will promptly give written notice of the filing of this Notice of Removal to all parties, and a copy of this Notice will be filed with the Clerk of County of Alameda Superior Court as required by 28 U.S.C. § 1446(d). *See* Ex. 3 (Notice to State Court).

**CONCLUSION**

WHEREFORE, Notice is given that this action is removed from County of Alameda Superior Court to the United States District Court for the Northern District of California.

Dated: April 8, 2021

JENNER & BLOCK LLP

/s/ Kate T. Spelman
Kate T. Spelman

*Attorney for Defendant*
Clearview AI, Inc.

**PROOF OF SERVICE**

I am a citizen of the United States and resident of the State of California. I am employed in Los Angeles, California. My business address is 633 West 5th Street, Suite 3600, Los Angeles, CA 90071-2054. I am over the age of eighteen years, and not a party to the within action. On April 8, 2021, I caused to be served the following documents in the manner described below:

**CLEARVIEW AI, INC.'S NOTICE OF REMOVAL**

☑ (BY OVERNIGHT CLASS MAIL): I am personally and readily familiar with the business practice of Jenner & Block LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained for overnight delivery.

On the following parties in this action:

BRAUNHAGEY & BORDEN LLP
Ellen V. Leonida
leonida@braunhagey.com
Matthew Borden
borden@braunhagey.com
J. Noah Hagey
hagey@braunhagey.com
Athul K. Acharya
acharya@braunhagey.com
Gunnar K. Martz
martz@braunhagey.com
351 California St., Tenth Floor
San Francisco, CA 94104

*Counsel for Plaintiffs Steven Renderos, Valeria Thais, Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist Fund*

JUST FUTURES LAW
Sejal R. Zota
sejal@justfutureslaw.com
Dinesh McCoy
dinesh@justfutureslaw.com
95 Washington St., Suite 104-149
Canton, MA 02021

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 8, 2021, in Los Angeles, California.

*/s/ Kate T. Spelman*
Kate T. Spelman