# EXHIBIT 2

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ellen V. Leonida, Esq. (SBN: 184194); Matthew Borden, Esq. (SBN: 214323)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
TELEPHONE NO.: (415) 599-0210    FAX NO.: (415) 599-0210
ATTORNEY FOR *(Name):* Plaintiffs Steven Renderos, et al.

**FOR COURT USE ONLY**

**FILED BY FAX**
ALAMEDA COUNTY

March 09, 2021

CLERK OF
THE SUPERIOR COURT
By Xian-xii Bowie, Deputy

CASE NUMBER:

**RG21091138**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson Courthouse

CASE NAME:
Steven Renderos, et al. v. Clearview AI, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ **Unlimited** ☐ **Limited** (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☑ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence    f. ☑ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 3; CL Appropriation of Likeness; CA Constitution art. 1, § 1; et seq.
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 9, 2021

Ellen Leonida
     (TYPE OR PRINT NAME)             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

1  Ellen V. Leonida, Esq. (SBN: 184194)
       leonida@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
4  Athul K. Acharya, Esq. (SBN: 315923)
       acharya@braunhagey.com
5  Gunnar K. Martz, Esq. (SBN: 300852)
       martz@braunhagey.com
6  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
7  San Francisco, CA 94104
   Telephone: (415) 599-0210
8  Facsimile: (415) 599-0210

9  Sejal R. Zota (*pro hac vice* application forthcoming)
       sejal@justfutureslaw.org
10 Dinesh McCoy (*pro hac vice* application forthcoming)
       dinesh@justfutureslaw.org
11 JUST FUTURES LAW
   95 Washington Street, Suite 104-149
12 Canton, MA 02021
   Telephone: (919) 698-5015

13

14 Attorneys for PLAINTIFFS STEVEN
   RENDEROS, VALERIA THAIS SUÁREZ
15 ROJAS, REYNA MALDONADO, LISA
   KNOX, MIJENTE SUPPORT
16 COMMITTEE, and NORCAL RESIST
   FUND

17

18          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

19                    **COUNTY OF ALAMEDA**

20

21 | STEVEN RENDEROS, VALERIA THAIS | Case No. _____ |
22 | SUÁREZ ROJAS, REYNA MALDONADO, | |
   | LISA KNOX, MIJENTE SUPPORT | **COMPLAINT** |
23 | COMMITTEE, and NORCAL RESIST FUND, | |
   | | **JURY TRIAL DEMANDED** |
   |          Plaintiffs, | |
24 | | |
   |      v. | |
25 | | |
   | CLEARVIEW AI, INC., and DOES 1-10, | |
26 | | |
   |          Defendants. | |
27

28
                                                        Case No. _____

FILED BY FAX
ALAMEDA COUNTY

March 09, 2021

CLERK OF
THE SUPERIOR COURT
By Xian-xii Bowie, Deputy

CASE NUMBER:

RG21091138

1    Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna Maldonado, Lisa Knox,

2  Mijente Support Committee, and NorCal Resist Fund allege as follows:

3                                    **INTRODUCTION**

4    1.    Plaintiffs are two community-based organizations and four political activists. They

5  bring this action under California law to enjoin Defendant Clearview AI, Inc. ("Clearview") from

6  illegally acquiring, storing, and selling their likenesses, and the likenesses of millions of

7  Californians, in its quest to create a cyber surveillance state.

8    2.    Defendant Clearview is a company with ties to alt-right and white supremacist

9  organizations. Clearview has built the most dangerous facial recognition database in the nation by

10  illicitly collecting over three billion photographs of unsuspecting individuals. Clearview's database

11  is almost seven times the size of the FBI's. Clearview has provided thousands of governments,

12  government agencies, and private entities access to its database, which they can use to identify

13  people with dissident views, monitor their associations, and track their speech. As expressly

14  intended by Clearview's creators and early investors, its mass surveillance technology

15  disproportionately harms immigrants and communities of color.

16    3.    Clearview built its database by violating the privacy rights of Plaintiffs and all

17  California residents and making commercial use of their likenesses. Clearview illicitly gathers,

18  copies, and saves images by "scraping" them from websites, like Facebook, Twitter, and Venmo.

19  Clearview persists despite having received multiple requests to stop this practice, which violates

20  many of the websites' terms of service and the contracts between the sites and their users.

21    4.    After obtaining these images, Clearview uses algorithms to extract the unique facial

22  geometry of each individual depicted in the images, creating a purported "faceprint" that serves as

23  a key for recognizing that individual in other images, even in photographs taken from different

24  angles. Clearview's "faceprints" rely on an individual's immutable biological characteristics—for

25  example, the position, size, and shape of the eyes, nose, cheekbones, and jaw—to purportedly

26  capture their biometric signature.

27    5.    Clearview's end product is facial recognition technology that claims to enable its

28  users to identify virtually anyone simply by uploading a photograph. Users can photograph a

stranger at a political rally or house of worship, upload the photo to Clearview's database, and instantly see other photographs of the same person linked to various social media platforms and websites. The websites often describe the person's address, employment information, political affiliations, religious activities, and familial and social relationships, among other sensitive information. With Clearview, users can access all this information on their phones with the tap of a finger. Clearview's portable surveillance technology thus provides instantaneous access to almost every aspect of our digital lives.

6.      Clearview has licensed its database to governments around the world, large-scale retailers, and law enforcement agencies throughout the United States. According to news reports, by February 2020, people associated with 2,228 companies, law enforcement agencies, and other institutions had collectively performed nearly 500,000 searches of Clearview's faceprint database. In August 2020, Clearview's CEO bragged that over 2,400 police agencies were using Clearview.

7.      Clearview has been banned internationally. Canada has asked Clearview to remove the faces of Canadian residents from its database, because "what Clearview does is mass surveillance"—putting all Canadians "continually in a police lineup."[1] Similarly, the European Union recently found, after an 11-month investigation, that Clearview's practices violate its General Data Protection Regulations.

8.      Multiple municipalities and law enforcement agencies in the United States have also banned Clearview and other facial recognition technology, in part because of the potential for abuse, false positives, and image manipulation. Studies have found empirical evidence of racial, gender, and age bias in facial recognition technology—with Asian people and African Americans 100 times more likely to be misidentified than white men.

9.      Nonetheless, Clearview continues to sell access to its database to California police agencies and U.S. Immigration and Customs Enforcement (ICE). This is not happenstance; one person who helped build Clearview stated in 2017 that the purpose of the technology was to "ID all the illegal immigrants for the deportation squads." ICE can deploy Clearview's technology even in

---

[1] Kashmir Hill, *Clearview AI's Facial Recognition App Called Illegal in Canada,* N.Y. Times, (Feb. 3, 2021), https://www.nytimes.com/2021/02/03/technology/clearview-ai-illegal-canada.html.

1   cities and counties that have banned the use of facial recognition technology, including multiple

2   cities in Alameda County.

3          10.     Plaintiffs are activists, including immigrants, who have engaged in political speech

4   critical of the police, ICE, and immigration policy in both their personal and professional

5   capacities. Plaintiffs Mijente Support Committee ("Mijente") and NorCal Resist Fund ("NorCal

6   Resist") are two immigrant rights, membership-based organizations representing the interests of

7   thousands of California residents. The ability to control their likenesses and biometric identifiers—

8   and to continue to engage in political speech critical of the police and immigration policy, free

9   from the threat of clandestine and invasive surveillance—is vital to Plaintiffs, their members, and

10  their missions.

11                                    **PARTIES**

12         **A.     Plaintiffs**

13         11.     Plaintiff Steven Renderos ("Plaintiff Renderos") is a resident of Alameda County

14  and the Executive Director of the Center for Media Justice, a grassroots organization fighting for

15  racial, economic, and gender justice in a digital age. The Center for Media Justice has recently

16  focused on challenging the use of invasive technology in the context of policing and the criminal

17  legal system, as well as ensuring that people of color have the communications tools to amplify

18  their voices effectively. Plaintiff Renderos has worked with the Center for Media Justice for almost

19  nine years, and his role includes developing strategy for Media Justice's programmatic work.

20  Plaintiff Renderos frequently uses social media for both personal and professional purposes and has

21  public-facing Facebook and Twitter accounts where he frequently expresses his views for the

22  purposes of political and policy advocacy. Plaintiff Renderos is frequently critical of police and

23  ICE practices in both his personal and professional capacity, and he has been a public advocate on

24  the importance of limiting the use of surveillance technology by law enforcement. On information

25  and belief, Clearview has captured Plaintiff Renderos' biometric data and stored it in its faceprint

26  database. Plaintiff Renderos has never consented to having Clearview collect or use his image or

27  biometric data.

28

12. Plaintiff Valeria Thais Suárez Rojas ("Plaintiff Suárez") is a resident of Alameda County and formerly worked as the Youth Organizer at California Immigrant Youth Justice Alliance (CIYJA), where they were a vocal advocate on behalf of immigrant rights. They continue to work on immigrant rights issues in the Bay Area. Plaintiff Suárez is an immigrant themself, and has engaged in political speech critical of the police, ICE, immigration policy, and government entities. Plaintiff Suárez has uploaded photos of themself on several social media platforms including Twitter, Instagram, Facebook, and Venmo. They have included pictures of themself with their friends and family on these platforms, and their friends and family have also posted pictures including Plaintiff Suárez. They frequently use their social media accounts as activism tools, and post content related to their political views on these platforms. Specifically, Plaintiff Suárez has used their social media accounts to criticize ICE and raise money for community members recently released from detention, among other political and organizing-based messages. Plaintiff Suárez made their social media accounts private in early 2020. While they occasionally make their accounts public to support fundraising campaigns, the accounts usually remain private. However, others have continued to post photos of Plaintiff Suárez on social media platforms. On information and belief, Clearview has captured their biometric data and stored it in its faceprint database, including images of their face that are no longer publicly accessible. Plaintiff Suárez has never consented to Clearview collecting or using their image or their biometric data.

13. Plaintiff Lisa Knox ("Plaintiff Knox") is a resident of Alameda County and Legal Director of the California Collaborative for Immigrant Justice, where she works to create and support strategies to fight for the liberation of immigrants in detention through direct representation, litigation, and advocacy. Previously, Plaintiff Knox was a managing attorney at Centro Legal de la Raza, where she helped found and manage the detained representation project. Plaintiff Knox oversaw emergency legal services for Alameda County's rapid response network and managed legal clinics at two California detention centers. Plaintiff Knox participates in and often speaks at demonstrations critical of ICE and the police. Plaintiff Knox has used several social media platforms including Twitter, Instagram, Facebook, and Venmo, and she has uploaded photos of herself, including photographs of herself with friends and family, on these platforms. Plaintiff

1  Knox frequently uses her social media accounts as activism tools and has posted content critical of

2  police and ICE. On information and belief, Clearview has captured her biometric data and stored it

3  in its faceprint database. Plaintiff Knox has never consented to Clearview collecting or using her

4  image or biometric data.

5       14.     Plaintiff Reyna Maldonado ("Plaintiff Maldonado") is currently a business owner in,

6  and resident of, Oakland, California. Plaintiff Maldonado formerly worked as an immigrant rights

7  community organizer. Plaintiff Maldonado is an immigrant who has deferred action as a result of

8  the Deferred Action for Childhood Arrivals (DACA) program. As an organizer, she worked in

9  coalitions to support undocumented youth in the Bay Area, including by supporting housing and

10  employment efforts and by promoting mental health resources for undocumented organizers.

11  Plaintiff Maldonado frequently uses social media both for personal and business purposes. Plaintiff

12  Maldonado currently owns a restaurant, and uses social media to help advertise the business and

13  share updates with customers. While her personal accounts are private, she has at times loosened

14  the privacy restrictions. Plaintiff Maldonado has used these accounts as an activism tool, posting

15  about political issues related to immigrant rights advocacy, posting in support of the Black Lives

16  Matter movement, and speaking out against police and ICE practices. On information and belief,

17  Clearview has captured her biometric data and stored it in its faceprint database. Plaintiff

18  Maldonado has never consented to Clearview collecting or using her image or biometric data.

19       15.     Plaintiff NorCal Resist, a California corporation, is a grassroots, membership-based

20  organization working to equip impacted communities with the tools needed to fight immigration

21  injustice. Plaintiff NorCal Resist has a significant interest in ensuring that immigrant and activists'

22  rights are respected and upheld, including their rights to safety and privacy. Plaintiff NorCal Resist

23  hosts Know Your Rights trainings relating to direct actions and navigating encounters with ICE and

24  police, assists with rapid response to support local residents targeted in immigration enforcement

25  actions, and has a bail fund that supports community members arrested in racial justice protests or

26  for immigration-related charges. Plaintiff NorCal Resist has close to 7,000 members throughout

27  Northern California, including more than 200 members in Alameda County. Members support the

28  organization by donating money and volunteering to support local actions and events, and members

1   vote on the leadership of the organization. NorCal Resist members have been critical of ICE,

2   immigration policy, and policing tactics, and they have expressed concern through both their

3   conduct and speech in relation to their work with Plaintiff NorCal Resist. On information and

4   belief, the biometric information and identifiers of many members of Plaintiff NorCal Resist have

5   been, and will continue to be, captured in Clearview's database without their consent. Clearview's

6   practices pose a threat to Plaintiff NorCal Resist's members by divesting them of the power to

7   control their biometric identifiers, and by chilling their ability to exercise various constitutional

8   rights—including the right to protest and to travel—without being instantaneously identified and

9   tracked.

10       16.      Plaintiff Mijente, an Arizona corporation, is a national digital and grassroots hub for

11   Latinx and Chicanx movement building and organizing that seeks to increase the profile of policy

12   issues that matter to its communities and increase the participation of Latinx and Chicanx people in

13   the broader movements for racial, economic, climate, and gender justice. Plaintiff Mijente

14   organizes around surveillance issues in the immigrant community, particularly in the face of

15   increasing technological capabilities of corporations and the government, and has a significant

16   interest in halting data sharing practices that result in the arrest, detention, and deportation of

17   immigrants. Mijente has more than 300 members in California and 50 in Alameda County, many of

18   whom have, at times, uploaded their photos to various internet-based platforms and websites, and

19   have engaged in political speech that could be considered critical of the police, ICE, immigration

20   policy, and government entities. Plaintiff Mijente's members have specifically criticized law

21   enforcement's use of surveillance technology to police immigrant communities. These members

22   use their accounts as an activism tool, and on information and belief, their biometric information

23   and identifiers have been, and will continue to be, captured in Clearview's database without their

24   consent. Clearview's practices pose a threat to Plaintiff Mijente's members by divesting them of

25   the power to control their biometric identifiers, and by chilling their ability to exercise various

26   constitutional rights—including the right to protest and to travel—without being instantaneously

27   identified and tracked.

28

17.     Plaintiffs Suárez, Knox, Maldonado, and Renderos, as well as members of Plaintiffs NorCal Resist and Mijente, did not consent to have their biometric data harvested by Clearview, did not understand that their biometric data could or would be obtained by Clearview or anyone else when they posted images of themselves and their friends, families and associates, and have suffered multiple injuries as a result of Clearview's actions, including, without limitation: expenditure of resources in understanding the extent of Clearview's misappropriation of their and their members' identities, images, likenesses, and biometric data; loss of their property rights in their own identities, images, likenesses, and biometric data; mental anguish as a result of the invasion of their privacy; and fear that they and their communities and families will be targeted for their political speech, associations, affiliations, and/or immigration status.

**B.     Defendant**

18.     Defendant Clearview AI, Inc., is a Delaware corporation with its principal place of business in New York, NY. Clearview conducts business throughout the State of California. On information and belief, Clearview was founded by Hoan Ton-That (far right, below) and Richard Schwartz, a former aide to Rudy Giuliani, Esq.



19.     Clearview founder Hoan Ton-That, as well as several people associated with Clearview, have a history of longstanding ties to the alt-right, a far-right ideology based on the belief that white identity is under attack. Persons with ties to Clearview include "pizzagate" conspiracy theorist Mike Cernovich; neo-Nazi hacker and *The Daily Stormer* webmaster, Andrew Auernheimer; former chief technology officer of Business Insider who marched with neo-Nazis in

1  Charlottesville, Virginia, Pax Dickinson; and former Breitbart writer, Charles Johnson. In a

2  Facebook post, Johnson described "building algorithms to ID all the illegal immigrants for the

3  deportation squad," likely referring to Smartcheckr, Defendant's name before being rebranded to

4  "Clearview." Marko Jukic is a former Clearview employee whose job included pitching Clearview

5  to law enforcement agencies. In 2015, he wrote that he "wholeheartedly endorse[s] racism,

6  racialism, ethnocentrism, Islamophobia, Eurocentrism and anti-Semitism." Writing under a

7  pseudonym, Jukic described diversity and equality as "indisputably corrosive to civilization," and

8  said that "violence most definitely is the answer."

9         20.     Clearview has registered as a data broker in the State of California. It has sold

10  licenses to policing agencies such as the El Segundo and Antioch Police Departments. It promotes

11  and markets its faceprint database throughout the State of California, in part by offering trial use.

12  The Los Angeles Police Department, Long Beach Police Department, San Diego Police

13  Department, San Diego District Attorney's Office, Orange County Sheriff's Office, and San Mateo

14  Sheriff's Office have all used Clearview on a trial basis. Additionally, Clearview engages in the

15  widespread collection of California residents' images and biometric information without notice or

16  consent. On information and belief, Clearview illicitly scrapes images of thousands of people from

17  websites and platforms owned and operated by California-based companies, such as Facebook.

18         21.     Does 1-10 are individuals who have participated in, and/or aided and abetted

19  Clearview in the unlawful acts set forth herein.

20                          **JURISDICTION AND VENUE**

21         22.     The Court has personal jurisdiction over Clearview pursuant to California Code of

22  Civil Procedure § 410.10 because Clearview conducts business transactions in California; has

23  intentionally availed itself of the laws and markets of California through the use, promotion, sale,

24  marketing, and/or distribution of its products and services at issue in this Complaint; unlawfully

25  acquires and profits from the biometric data of California residents; has committed unlawful acts

26  arising from and related to its conduct and activity in California complained of in this complaint;

27  and has committed unlawful acts expressly aimed at California residents from which this action

28  arises.

23.      Venue is proper in Alameda County pursuant to California Code of Civil Procedure § 395.5 because Plaintiffs' injuries occurred in Alameda County and Defendant Clearview is a foreign corporation within the meaning of California Corporations Code § 171 but has not registered a principal place of business with the California Secretary of State.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

## I.    DEFENDANT CLEARVIEW'S FACIAL RECOGNITION TECHNOLOGY

### A.    How Clearview Constructs Its Illegal Database

24.      To build its database, Clearview illicitly scrapes images of millions of people from hundreds of websites including Facebook, Twitter, LinkedIn, Venmo, employment sites, and news sites. Scraping is the process of using automated computer software to gather and copy data from websites on the internet into a database for further retrieval and analysis. To date, Clearview purportedly has scraped more than three billion images of human faces, which the company then stores in its database.

25.      At no point does Clearview attempt to inform the individuals whose likenesses Clearview acquires that Clearview is collecting and gathering their images. It does not obtain those individuals' consent. Clearview also does not notify individuals that it may be breaching websites' terms of service to scrape, store, and use the individuals' images. Nor does Clearview seek their consent to do so.

26.      Clearview also scrapes images of people that were uploaded without their knowledge or consent, including images posted by friends or relatives and even images of people who inadvertently appear in the backgrounds of photographs taken by strangers. In those instances, the individual consents neither to having her image uploaded nor to Clearview scraping and using the image.

27.      Multiple online entities, including Google, YouTube, Facebook, Venmo, LinkedIn, and Twitter, have requested that Clearview cease and desist from scraping images from their platforms. These companies determined that Clearview's scraping was so invasive that it violated their terms of service with their respective users. Therefore, even if a user consents to a website's terms of service, that consent does not extend to Clearview's scraping.

28.       After scraping the data, Clearview extracts biometric information—the distinct and immutable physical characteristics of an individual that can be used to later identify that individual—from the scraped images. A biometric identifier is a piece of biometric information that Clearview can use to authenticate an individual's identity. Clearview extracts biometric identifiers based on individuals' faces, such as the position, size, and shape of the eyes, nose, cheekbones, and jaw.

29.       Clearview uses artificial intelligence ("AI") technology to analyze the facial geometry of the faces contained within the scraped images. During the analysis step, Clearview uses its facial recognition AI's analysis of scraped images to create faceprints, which are digitally recorded representations of individuals' faces. Clearview uses individuals' biometric data to create faceprints; faceprints are not accessible or perceptible without Clearview's technology.

30.       During the recognition step, Clearview uses its facial recognition AI to search, identify, classify, and index faceprints in its database.

31.       Clearview created a mobile application that allows its users to have access to Clearview's database of images. Users may upload a photo, known as a "probe image," to the mobile application, and Clearview's facial recognition software will match the uploaded photo to faceprints within the database. It will display the faceprints, as well as links to the web pages from which Clearview obtained the photographs to capture those faceprints. Those websites often describe sensitive personal information including address, employment, relationship, and political opinion information, furthering the privacy harms. Because Clearview has scraped those images, they are available in Clearview's database even if the image no longer exists on the original website.

32.       In addition to scraped images, Clearview retains the probe images the user uploaded to search its database. By default, Clearview stores the probe images on its servers "forever."

33.       Clearview maintains a log of all searches ever conducted in its database by anyone. Clearview also appears to monitor searches clients run on its database. After a reporter asked police officers to upload a probe image of her into Clearview's database, for example, the company told the officers that they should not be speaking to the media.

34.     Because Clearview extracts biometric information from images, its database contains physical characteristics of individuals. Individuals can change their characteristics only through extreme means like plastic surgery. Therefore, once Clearview enters an individual into its database, that individual permanently loses anonymity and privacy. Indeed, Clearview allows anyone with access to its database to capture a single photo of an individual, and with a few keystrokes, to determine the identity of the person and their personal details in real time—as they shop in the grocery store, attend a political rally, or walk down the street. Clearview has repeatedly touted its ability to provide information about people in "real-time" in patent applications.

35.     Facial recognition algorithms have repeatedly been shown to perform poorly when examining the faces of people of color. Consequently, facial recognition technology has a far greater risk of misidentifying people of color. Multiple municipalities, including San Francisco and Oakland, have rejected facial recognition technology for that very reason. For example, a recent study by the National Institute of Standards and Technology (NIST) found that a majority of facial surveillance software exhibits racial bias.[2] According to that study, African American and Asian people are up to 100 times more likely to be misidentified by a facial recognition system than white men, depending on the algorithm and use case.[3] Clearview has refused to participate in NIST's Facial Recognition Vendor Test Program or any other meaningful, independent review.

**B.     Who Can Access Clearview**

36.     By February 2020, Clearview had shared its technology with more than 2,200 law enforcement departments, government agencies, and private companies across 27 countries.

37.     Of particular concern, the Clearview database allows law enforcement agencies not only to identify people in public spaces, but also to learn those people's professional roles,

---

[2] Patrick Grother, Mei Ngan, & Kayee Hanaoka, Nat'l Inst. of Standards and Tech., U.S. Dep't of Commerce, Face Recognition Vendor Test (FRVT) Part 3: Demographic Effects, NISTIR 8280 (Dec. 2019), https://nvlpubs.nist.gov/nistpubs/ir/2019/NIST.IR.8280.pdf.

[3] These "demographic differentials" in error rates are severe enough that in 2019, members of Congress called on the Trump administration to reconsider its plans to expand the use of facial recognition technology. *See* Drew Harwell, *Federal Study Confirms Racial Bias of Many Facial-Recognition Systems, Casts Doubt on Their Expanding Use*, Washington Post (Dec. 19, 2019), https://www.washingtonpost.com/technology/2019/12/19/federal-study-confirms-racial-bias-many-facial-recognition-systems-casts-doubt-their-expanding-use/.

Case No. _____

1   religious affiliations, familial connections and friendships, romantic partnerships, personal

2   activities, political views, patterns of travel, and even home addresses, all without receiving

3   consent, obtaining a warrant, or providing probable cause to conduct a search.

4        38.    Clearview has selectively provided access to its database to its friends and investors.

5   For example, John Catsimatidis, the billionaire owner of the Gristedes grocery store chain, used the

6   technology to identify and investigate his daughter's boyfriend.

7        39.    Clearview's collection of faceprints also poses an inherent security risk, as this

8   sensitive information may be subject to hacking and data breaches. Breaches of biometric data are

9   particularly harmful since, as noted above, biometrics cannot readily be changed. Once someone's

10   biometric information has been compromised, there is no redress.

11        40.    Clearview has a history of data breaches. In February 2020, hackers gained access to

12   Clearview's client list. Clearview responded to the breach by stating that "data breaches are part of

13   life in the 21st Century."

14        41.    In addition, in early 2020, cybersecurity firm SpiderSilk discovered a misconfigured

15   server which allowed it to access Clearview's source code, applications, and internal files,

16   including 70,000 videos taken from one of Clearview's prototype Insight Cameras located in the

17   lobby of a residential building.

18        42.    In response, Clearview's CEO stated that Clearview experiences "a constant stream

19   of cyber intrusion attempts, and [that Clearview had] been investing heavily in augmenting our

20   security." This blasé attitude is emblematic of Clearview's response to its significant security

21   vulnerabilities. On information and belief, Clearview has taken no concrete measures to shore up

22   its data security, even though the sheer size of its database makes it a tempting target for hackers

23   and risks exposing people's immutable data and personal information.

24  **II.    POLICE AND IMMIGRATION ENFORCEMENT AGENCIES USE CLEARVIEW**

25        43.    According to Clearview, over 2,400 law enforcement agencies at both the federal

26   and the state level have used its technology since January 2019.

27        44.    Further, one of Clearview's main marketing strategies is to offer free trials to police

28   agencies. Clearview has promoted free trials to several police agencies across California including

1    Orange County Sheriff's Department, Fresno Police Department, Santa Monica Police Department,

2    Long Beach Police Department, Los Angeles Police Department, and San Diego Police

3    Department, and several of these agencies have accepted its offer.

4         45.    Clearview's marketing materials tout "unlimited searches" and encourage officers

5    not to "stop at one search." They also suggest that officers "search a celebrity to see how powerful

6    the technology can be."

7         46.    Clearview also offers its users the ability to map subjects' associational networks.

8    For example, if a search is run on Person A, the results could include a photograph of Person A

9    with other people, including Person B. The user can then click on the face of Person B and

10   immediately run her through the database. In this way, Clearview compromises Plaintiffs'

11   associational privacy as well.

12        47.    In June 2019, ICE began a paid pilot program with Clearview without a formal

13   contract. The units of the Department of Homeland Security ("DHS") initiating searches included

14   Customs and Border Patrol ("CBP") and ICE Enforcement and Removal Operations ("ERO").

15   ERO is the body responsible for the arrest and deportation of noncitizens present in the United

16   States without status.

17        48.    On August 12, 2020, Clearview entered into a purchase order contract in which ICE

18   agreed to pay $224,000 for "clearview licenses."

19        49.    Plaintiffs' concerns about being targeted and misidentified are not abstract—ICE

20   has a history of collection of biometric data to use against vulnerable populations. Since 2015, for

21   example, ICE has performed thousands of faceprint searches on state DMV databases,

22   unbeknownst to license holders, to identify, locate, and deport individuals. ICE has conducted these

23   searches in at least three states that allow undocumented immigrants to obtain a license or driver

24   privilege card. ICE runs these searches without a warrant or any other official approval.

25        50.    Plaintiffs' concerns are heightened in light of ICE's history, including its recent role

26   in family separation, its longstanding practice of detaining people in horrific conditions, and its

27   pattern of racial and religious profiling. ICE has also systematically surveilled, detained, and

28   deported immigrant activists who speak out about immigration policies and practices. For example,

1   ICE has targeted Maru Mora-Villalpando, a member of both La Resistencia and Mijente, because

2   of her "anti-ICE protests." Ravi Ragbir was arrested, at his ICE check-in meeting, after protests

3   that ICE characterized as an unwanted "display of wailing kids and wailing clergy." Daniela

4   Vargas was arrested as she left a press conference supporting the DACA program. A number of

5   immigrant rights groups and immigrants have sued ICE for violating their rights to speak,

6   assemble, and associate under the First Amendment.

7          51.    Federal agencies, including DHS and its subsidiaries, also have a history of

8   conducting intrusive surveillance on protestors associated with the Black Lives Matter movement.

9   A leaked memorandum shows that the Department of Justice ("DOJ") authorized the Drug

10  Enforcement Administration to "conduct covert surveillance" and collect intelligence on people

11  participating in protests over the police killing of George Floyd. In summer 2020, DHS units

12  deployed agents to protests associated with the Black Lives Matter movement across the United

13  States. CBP agents detained protestors, abducting them from the streets of Portland despite a lack

14  of probable cause. Additionally, in May 2020, CBP deployed a Predator drone over Black Lives

15  Matter protestors in Minneapolis. The drone "was preparing to provide live video to aid in

16  situational awareness at the request of our federal law enforcement partners in Minneapolis."

17         52.    Law enforcement has deployed Clearview's facial recognition technology to

18  identify and arrest demonstrators exercising their First Amendment rights at a protest in Miami.

19  Reports indicate that Minnesota law enforcement may have been using Clearview's facial

20  recognition technology on protestors, particularly in Minneapolis, which prompted Senator Edward

21  Markey of Massachusetts to write to Clearview "to take urgent action to prevent the harmful use of

22  its product."

23         53.    Senator Markey also wrote to former Attorney General William Barr, expressing

24  concern about the DOJ's surveillance of Black Lives Matter protesters and potential use of

25  Clearview as part of that surveillance.[4]

26

27  _____

28  [4] Letter from Senator Edward J. Markey to Attorney General William Barr (June 11, 2020),
    https://www.markey.senate.gov/imo/media/doc/DOJ%20Protest%20Surveillance.pdf.

54.     In response to the Black Lives Matter protests in the summer of 2020 and concerns over law enforcement's misuse of facial recognition technology—and the potential racial bias inherent in that technology—several companies making facial recognition software, including IBM and Amazon, decided to pause or halt selling their software to law enforcement. Clearview's CEO stated that Clearview would continue to sell its technology to law enforcement despite these concerns.

55.     Clearview's partnership with ICE poses a grave threat to First Amendment rights and chills Plaintiffs and others from participating in constitutionally protected activity. ICE can deploy Clearview throughout California, including Alameda County, where multiple communities have banned local law enforcement's use of facial recognition technology.

56.     Clearview allows ICE to conduct arbitrary digital searches of Plaintiffs, their members, and other California residents, instantly accessing their faceprints without privacy safeguards, warrants, or a showing of reasonableness. Given ICE's record of conducting intrusive surveillance on immigrant communities and protestors, Plaintiffs fear that ICE will use Clearview's faceprint database to surveil and target their communities, exacerbating their injury.

57.     Plaintiffs also fear that the potential racial bias inherent in the technology will increase the risk of misidentification by ICE and police officers.

## III.    CLEARVIEW VIOLATES PLAINTIFFS' RIGHTS

58.     On information and belief, Clearview has scraped (and continues to scrape) images of Plaintiffs Renderos, Suárez, Knox, and Maldonado from websites, extracted the biometric data from the individual Plaintiffs' images, calculated their unique physical characteristics, and generated a faceprint biometric template therefrom enabling the identification of Plaintiffs, in direct violation of the laws identified in this Complaint, and without notice to, or permission from, Plaintiffs.

59.     Clearview sells access to its database containing the individual Plaintiffs' images and faceprints to third-party entities for commercial monetary gain. Clearview does so without permission or notice.

1    60.    Plaintiffs Mijente and NorCal Resist's members, like millions of other California

2    residents, have uploaded numerous photos of themselves to social media sites and other websites.

3    Others have uploaded photos of them as well. Upon information and belief, Clearview has captured

4    the faceprints of members of Plaintiffs NorCal Resist and Mijente from photographs online. The

5    sheer volume of online photographs Clearview scrapes to capture faceprints for its database makes

6    it a near certainty that anyone whose photographs are posted to publicly accessible portions of the

7    internet will have been subjected to surreptitious and nonconsensual faceprinting by Clearview.

8    61.    For example, Confidential Member 1 is a resident of Alameda County and an active

9    member of NorCal Resist. Confidential Member 1 regularly engages in speech that is critical of

10   both police and ICE by participating in demonstrations. At those events, because of concerns for

11   his security and fear of surveillance, he often wears a mask. Confidential Member 1 is active on

12   Facebook, where he has a private account (but a publicly accessible profile page on which his

13   photo sometimes appears). He shares commentary there, also, that could be viewed as critical of

14   law enforcement. On information and belief, Clearview has captured his images, extracted his

15   biometric information, and converted them into faceprints for Clearview's faceprint database.

16   Confidential Member 1 has never given Clearview consent to do so. Learning that he is in the

17   database where he can be identified has caused him to suffer mental anguish.

18   62.    Similarly, Confidential Member 2 is a resident of Alameda County and an active

19   member of Mijente. Confidential Member 2 regularly criticizes ICE and police practices, and

20   engages in numerous organizing efforts around the Bay Area to promote immigrant rights.

21   Confidential Member 2 is active on Facebook and Twitter, and frequently posts content critical of

22   immigration enforcement policies. His Facebook account is private, and he removed his name and

23   face image from Twitter in early 2021 because of concerns about his privacy and potential use of

24   his images without his consent. On information and belief, Clearview has captured his images,

25   extracted his biometric information, and converted them into faceprints for Clearview's faceprint

26   database. Confidential Member 2 has never given Clearview consent to do so. Learning that he is in

27   the database where he can be identified has caused him to suffer mental anguish.

28

1   63.    Through its unauthorized access, use, and sale of Plaintiffs' photographs and

2  biometric data, Clearview infringes on Plaintiffs' interests in data security and ownership and

3  control of their identities, likenesses, personal data, and biometric identifiers.

4   64.    Furthermore, because Clearview sells its faceprint database to hundreds of law

5  enforcement entities, Plaintiffs have suffered injury to their peace of mind arising from their fear

6  that they will be retaliated against for their constitutionally protected views regarding policing and

7  immigration. They fear surveillance of their immigrant and people of color communities, and they

8  fear being targeted for arrest and deportation.

9   65.    Plaintiffs Suárez, Knox, Maldonado, and Renderos, as well as members of Plaintiffs

10  NorCal Resist and Mijente, have suffered multiple injuries as a result of Clearview's actions,

11  including, without limitation, that: (1) Plaintiffs have expended resources in an attempt to

12  understand the extent of Clearview's collection of their personal information; (2) Plaintiffs have

13  suffered loss and diminution of their property rights in their own identities, images, likenesses, and

14  biometric data; and (3) Plaintiffs have suffered mental anguish as a result of the invasion of their

15  privacy and worry that they and their communities will be targeted for their political speech or

16  immigration status and misidentified by Clearview's system.

17   66.    There is also a substantial likelihood that Clearview will capture individual

18  Plaintiffs' and organizational Plaintiffs' members' faceprints in the future. The sheer volume of

19  photos ingested by Clearview's technology on an ongoing basis creates a substantial likelihood that

20  any photos newly uploaded to publicly available websites will be obtained by Clearview and used

21  to capture faceprints.

22   67.    Each day that Clearview is allowed to continue its illegal activities, Plaintiffs suffer

23  immediate and irreparable injuries, including chilling of their core First Amendment rights of

24  association and to engage in political speech, injuries to their rights to privacy, injuries to their

25  property rights in their own likenesses and biometric information, and injuries to their peace of

26  mind and wellbeing.

27

28

68.     Defendants are guilty of recklessness, oppression, fraud, or malice. Defendants' conduct was intended to cause injury to Plaintiffs, and carried out with a willful and conscious disregard of Plaintiffs' rights.

## FIRST CAUSE OF ACTION
### Common Law Appropriation of Likeness

69.     Plaintiffs incorporate all preceding paragraphs as though set forth herein.

70.     Under California common law, the right against appropriation of likeness has four elements: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 418 (1983).

71.     Without providing notice to or obtaining consent from Plaintiffs and Plaintiffs' members, Clearview knowingly and surreptitiously collected Plaintiffs' and Plaintiffs' members' names, photographs, biometric information, and other identifiers (which constitute Plaintiffs' and Plaintiffs' members' "identities") by scraping images from websites in violation of many of the websites' policies prohibiting such conduct.

72.     Without notice to or consent from Plaintiffs and Plaintiffs' members, Clearview used their names, photographs, biometric information, and other identifiers to its advantage by copying them, saving them, and selling access to them to private and government entities worldwide.

73.     As a direct and proximate result of Clearview's conduct, Clearview has caused Plaintiffs economic injury and mental anguish. By appropriating Plaintiffs' and Plaintiffs' members' identities without consent, Clearview has deprived them of the opportunity to profit by licensing such use. Clearview's nonconsensual and knowing use of Plaintiffs' and Plaintiffs' members' identities for the purpose of commercial profit exposed Plaintiffs to secondary harms related to the sale of Plaintiffs' information to third parties, including law enforcement entities, that chills Plaintiffs' speech. Defendant's sale of Plaintiffs' converted identities has caused Plaintiffs to experience anxiety related to the threat of surveillance by third-party entities, such as ICE.

74.    Defendant's conduct has directly and proximately caused loss to Plaintiffs in an amount to be proven at trial. Plaintiffs also seek injunctive and equitable relief as is necessary to protect themselves and other California residents by requiring Clearview to comply with the common-law requirements for the nonconsensual appropriation of Plaintiffs' identities to Defendant's advantage.

## SECOND CAUSE OF ACTION
### California Constitution art. 1, § 1

75.    Plaintiffs incorporate all preceding paragraphs as though set forth herein.

76.    Under the California Constitution, art. 1, § 1, "[a]ll people" have certain "inalienable rights," including the right to "pursu[e] and obtain[] . . . privacy." This provision creates a right against private as well as government entities. The elements of this right of action are: (1) a legally protected interest in either "informational privacy" or "autonomy privacy"; (2) a reasonable expectation of privacy; and (3) a serious invasion of the privacy interest.

77.    Plaintiffs and Plaintiffs' members have legally protected interests in preventing unwanted access to their data by electronic or other covert means in violation of the law or social norms, in conducting personal activities without observation, and in advance notice and the opportunity to provide or withhold consent to such intrusions. These are all legally protected interests in informational privacy.

78.    Plaintiffs and Plaintiffs' members also have legally protected interests in their associational privacy, which is a component of both informational and autonomy privacy.

79.    Plaintiffs and Plaintiffs' members have a reasonable expectation of privacy in their names, photographs, biometric information, and other identifiers, because the websites from which Clearview scrapes such information prohibit such conduct in their terms of service. Plaintiffs and Plaintiffs' members also have a reasonable expectation of privacy in their biometric information because it can be used to identify them based on their unique and immutable physical and biological characteristics.

80.    Clearview's invasion of Plaintiffs' and Plaintiffs' members' privacy is serious and highly offensive for three reasons: first, because Clearview's conduct is surreptitious, in violation

of websites' terms of service, and in violation of numerous cease-and-desist letters from such websites; second, because Clearview extracts biometric information from Plaintiffs' immutable physical characteristics, such that once Clearview enters an individual into its database, that individual permanently loses anonymity and privacy; and third, because it places Plaintiffs' and Plaintiffs' members lives and livelihood in danger, both from being misidentified to law-enforcement and immigration agencies and from being correctly identified and targeted for retaliation for their public political stances.

## THIRD CAUSE OF ACTION
### Business & Professions Code §§ 17200, *et seq.*

81.     Individual Plaintiffs incorporate all preceding paragraphs as though set forth herein.

82.     The Unfair Competition Law ("UCL") prohibits, *inter alia*, any unlawful or unfair business practice. Clearview's conduct is both unlawful and unfair because it violates California Constitution art. 1, § 1, California Penal Code § 502, California's common-law right against appropriation of likeness, and the terms of use of the various websites where Clearview scraped the data.

83.     Individual Plaintiffs lost money or property as a result of Clearview's wrongful conduct. California law recognizes that individuals have a property right in their identity, image, biometric information and likeness, both by statute, Civ. Code §§ 3344, 3344.1, and through its common law appropriation-of-likeness tort. Clearview's use of Individual Plaintiffs' likenesses is a primary factor in private and government entities' purchases of Clearview's services. Without the likenesses of Individual Plaintiffs and others, Clearview would have no service to sell. By appropriating Individual Plaintiffs' likenesses without consent, Clearview has deprived them of the opportunity to profit by licensing such use. Additionally, Individual Plaintiffs have expended resources in understanding the extent of Clearview's misappropriation of their identities, images, likenesses, and biometric data.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following:

A.     Injunctive relief;

1    B.    Compensatory damages;

2    C.    Exemplary damages;

3    D.    An award of attorney's fees and costs; and

4    E.    Any other relief as equity and justice may require.

5

6  Dated: March 9, 2021                    Respectfully submitted,

7                                          BRAUNHAGEY & BORDEN LLP

8

9                                          _____

10                                         Ellen V. Leonida

11

12                                         JUST FUTURES LAW

13

14                                         _____
                                           Sejal R. Zota

15

16                                         Attorneys for Plaintiffs Steven Renderos,
                                           Valeria Thais Suárez Rojas, Reyna Maldonado,
17                                         Lisa Knox, Mijente Support Committee, and
                                           Norcal Resist Fund

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a jury trial of all claims and causes of action triable before a jury.

3

4  Dated: March 9, 2021                          Respectfully submitted,

5                                                BRAUNHAGEY & BORDEN LLP

6

7  _____

8                                                Ellen V. Leonida

9

10                                               JUST FUTURES LAW

11

12  _____

                                                 Sejal R. Zota

13

14                                               Attorneys for Plaintiffs Steven Renderos,
                                                 Valeria Thais Suárez Rojas, Reyna Maldonado,
15                                               Lisa Knox, Mijente Support Committee, and
                                                 Norcal Resist Fund

16

17

18

19

20

21

22

23

24

25

26

27

28

Leonida, Ellen
351 California Stret
Tenth Floor
San Francsico, CA   94104____

Clearview AI, LLC

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| Renderos | No. <u>RG21091138</u> |
|---|---|
| Plaintiff/Petitioner(s) | |
| VS. | |
| | NOTICE OF HEARING |
| Clearview A1, LLC | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE:  04/21/2021    TIME:  09:00 AM    DEPARTMENT:  21
LOCATION:  Administration Building, Fourth Floor
                      1221 Oak Street, Oakland

Case Management Conference:
DATE:  05/20/2021    TIME:  09:00 AM    DEPARTMENT:  21
LOCATION:  Administration Building, Fourth Floor
                      1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 21 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6937.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 21.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

**http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 21.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 21 by e-mail at Dept21@alameda.courts.ca.gov or by phone at (510) 267-6937.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  03/15/2021                    Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/16/2021.

By _____

Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED BY FAX**
ALAMEDA COUNTY

March 18, 2021

CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CLEARVIEW AI, INC., and DOES 1-10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
STEVEN RENDEROS, VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, and NORCAL RESIST FUND.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):*  Superior Court of California, County of Alameda René C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612 | RG21091138 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ellen V. Leonida, Esq.; BraunHagey & Borden LLP, 351 California Street, Tenth [Floor], San Francisco, CA 94104; (415) 599-0210

| DATE: | Clerk, | , Deputy |
|---|---|---|
| *(Fecha)*  March 18, 2021 | *(Secretario)* Lynn Wiley | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* CLEARVIEW AI, INC.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1  Ellen V. Leonida, Esq. (SBN: 184194)
      leonida@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
      borden@braunhagey.com
3  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
4  Athul K. Acharya, Esq. (SBN: 315923)
      acharya@braunhagey.com
5  Gunnar K. Martz, Esq. (SBN: 300852)
      martz@braunhagey.com
6  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
7  San Francisco, CA 94104
   Telephone: (415) 599-0210
8  Facsimile: (415) 599-0210

9  Sejal R. Zota (*pro hac vice* application pending)
      sejal@justfutureslaw.org
10 Dinesh McCoy (*pro hac vice* application pending)
      dinesh@justfutureslaw.org
11 JUST FUTURES LAW
   95 Washington Street, Suite 104-149
12 Canton, MA 02021
   Telephone: (919) 698-5015
13
   Attorneys for PLAINTIFFS STEVEN
14 RENDEROS, VALERIA THAIS SUÁREZ
   ROJAS, REYNA MALDONADO, LISA
15 KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST
16 FUND

17              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18                        **COUNTY OF ALAMEDA**

19

20 | STEVEN RENDEROS, VALERIA THAIS     Case No.: RG21091138
   SUÁREZ ROJAS, REYNA MALDONADO,
21 LISA KNOX, MIJENTE SUPPORT          **[PROPOSED] ORDER GRANTING**
   COMMITTEE, and NORCAL RESIST FUND,  **VERIFIED APPLICATION OF SEJAL**
22                                     **R. ZOTA TO APPEAR AS COUNSEL**
              Plaintiffs,              ***PRO HAC VICE***
23
         v.                           **ASSIGNED FOR ALL PURPOSES TO:**
24                                     The Honorable Winifred Y. Smith
   CLEARVIEW AI, INC., and DOES 1-10,  Department 21
25
              Defendants.             **Date:**          May 14, 2021
26                                     **Time:**          10:00 a.m.

27                                     **Reservation ID:**   R-2249846

28

1       On May 14, 2021, Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna

2   Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist Fund's ("Plaintiffs")

3   Motion for Sejal R. Zota to Appear as Counsel *Pro Hac Vice* came before this Court.  Based on the

4   evidence and briefing submitted, the pleadings and the arguments of counsel, and for good cause

5   shown, the Court orders as follows:

6       The Motion for Sejal R. Zota to Appear as Counsel *Pro Hac Vice* on behalf of Plaintiffs is

7   granted.

8

9   **IT IS SO ORDERED.**

10

11   Dated: _____, 2021

12                                       _____

                                      Hon. Winifred Y. Smith
                                      Judge, Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                 Case No.: RG21091138

[PROPOSED] ORDER

Ellen V. Leonida, Esq. (SBN: 184194)
 leonida@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
 borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
 hagey@braunhagey.com
Athul K. Acharya, Esq. (SBN: 315923)
 acharya@braunhagey.com
Gunnar K. Martz, Esq. (SBN: 300852)
 martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

Sejal R. Zota (*pro hac vice* application pending)
 sejal@justfutureslaw.org
Dinesh McCoy (*pro hac vice* application pending)
 dinesh@justfutureslaw.org
JUST FUTURES LAW
95 Washington Street, Suite 104-149
Canton, MA 02021
Telephone: (919) 698-5015

Attorneys for PLAINTIFFS STEVEN
RENDEROS, VALERIA THAIS SUÁREZ
ROJAS, REYNA MALDONADO, LISA
KNOX, MIJENTE SUPPORT
COMMITTEE, and NORCAL RESIST
FUND

**FILED BY FAX**
ALAMEDA COUNTY

March 30, 2021

CLERK OF
THE SUPERIOR COURT
By Keisha Ghee, Deputy

CASE NUMBER:

**RG21091138**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| STEVEN RENDEROS, VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, and NORCAL RESIST FUND, <br><br> Plaintiffs, <br><br> v. <br><br> CLEARVIEW AI, INC., and DOES 1-10, <br><br> Defendants. | Case No.: RG21091138 <br><br> **NOTICE OF MOTION AND MOTION FOR SEJAL R. ZOTA TO APPEAR AS COUNSEL *PRO HAC VICE*** <br><br> **ASSIGNED FOR ALL PURPOSES TO:** <br> The Honorable Winifred Y. Smith <br> Department 21 <br><br> **Date:** May 14, 2021 <br> **Time:** 10:00 a.m. <br><br> **Reservation ID:** R-2249846 |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on May 14, 2021 at 10:00 a.m., or as soon thereafter as

3 counsel may be heard, in Department 21 of the Alameda County Superior Court, Administration

4 Building, located at the Fourth Floor of 1221 Oak Street, Oakland California 94612, Sejal R. Zota

5 will and hereby does apply for an Order permitting her to appear as counsel *pro hac vice* in this

6 action on behalf of Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna Maldonado, Lisa

7 Knox, Mijente Support Committee, and Norcal Resist Fund ("Plaintiffs"), pursuant to Rule 9.40 of

8 the California Rules of Court. This motion is based upon this Notice of Motion and the attached

9 Verified Application of Sejal R. Zota.

10

11 Dated: March 30, 2021            Respectfully submitted,

12                       BRAUNHAGEY & BORDEN LLP

13

14                       By: _____

15                         Ellen V. Leonida

16                       Attorneys for Plaintiffs Steven Renderos,
                         Valeria Thais Suárez Rojas, Reyna Maldonado,

17                       Lisa Knox, Mijente Support Committee, and
                         Norcal Resist Fund

18

19

20

21

22

23

24

25

26

27

28

1  Ellen V. Leonida, Esq. (SBN: 184194)
       leonida@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
4  Athul K. Acharya, Esq. (SBN: 315923)
       acharya@braunhagey.com
5  Gunnar K. Martz, Esq. (SBN: 300852)
       martz@braunhagey.com
6  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
7  San Francisco, CA 94104
   Telephone: (415) 599-0210
8  Facsimile: (415) 599-0210

9  Sejal R. Zota (*pro hac vice* application pending)
       sejal@justfutureslaw.org
10 Dinesh McCoy (*pro hac vice* application pending)
       dinesh@justfutureslaw.org
11 JUST FUTURES LAW
   95 Washington Street, Suite 104-149
12 Canton, MA 02021
   Telephone: (919) 698-5015
13
   Attorneys for PLAINTIFFS STEVEN
14 RENDEROS, VALERIA THAIS SUÁREZ
   ROJAS, REYNA MALDONADO, LISA
15 KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST
16 FUND

17          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18                   **COUNTY OF ALAMEDA**

19

20 STEVEN RENDEROS, VALERIA THAIS     | Case No.: RG21091138
   SUÁREZ ROJAS, REYNA MALDONADO,
21 LISA KNOX, MIJENTE SUPPORT          | **[PROPOSED] ORDER GRANTING
   COMMITTEE, and NORCAL RESIST FUND,  | VERIFIED APPLICATION OF DINESH
22                                      | MCCOY TO APPEAR AS COUNSEL
            Plaintiffs,                | *PRO HAC VICE***
23
       v.                              | **ASSIGNED FOR ALL PURPOSES TO:**
24                                      | The Honorable Winifred Y. Smith
   CLEARVIEW AI, INC., and DOES 1-10,  | Department 21
25
            Defendants.                | **Date:**        May 14, 2021
26                                      | **Time:**        10:00 a.m.
27                                      | **Reservation ID:**   R-2249844
28

                                                           Case No.: RG21091138
                              [PROPOSED] ORDER

1    On May 14, 2021, Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna

2   Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist Fund's ("Plaintiffs")

3   Motion for Dinesh McCoy to Appear as Counsel *Pro Hac Vice* came before this Court.  Based on

4   the evidence and briefing submitted, the pleadings and the arguments of counsel, and for good

5   cause shown, the Court orders as follows:

6    The Motion for Dinesh McCoy to Appear as Counsel *Pro Hac Vice* on behalf of Plaintiffs is

7   granted.

8

9   **IT IS SO ORDERED.**

10

11   Dated: _____, 2021

12                                                          _____
                                                            Hon. Winifred Y. Smith
                                                            Judge, Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Ellen V. Leonida, Esq. (SBN: 184194)
   leonida@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
   borden@braunhagey.com
3  J. Noah Hagey, Esq. (SBN: 262331)
   hagey@braunhagey.com
4  Athul K. Acharya, Esq. (SBN: 315923)
   acharya@braunhagey.com
5  Gunnar K. Martz, Esq. (SBN: 300852)
   martz@braunhagey.com
6  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
7  San Francisco, CA 94104
   Telephone: (415) 599-0210
8  Facsimile: (415) 599-0210

9  Sejal R. Zota (*pro hac vice* application pending)
   sejal@justfutureslaw.org
10 Dinesh McCoy (*pro hac vice* application pending)
   dinesh@justfutureslaw.org
11 JUST FUTURES LAW
   95 Washington Street, Suite 104-149
12 Canton, MA 02021
   Telephone: (919) 698-5015

13
14 Attorneys for PLAINTIFFS STEVEN
   RENDEROS, VALERIA THAIS SUÁREZ
   ROJAS, REYNA MALDONADO, LISA
15 KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST
16 FUND

FILED BY FAX
ALAMEDA COUNTY

March 30, 2021

CLERK OF
THE SUPERIOR COURT
By Keisha Ghee, Deputy

CASE NUMBER:

RG21091138

17     **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18           **COUNTY OF ALAMEDA**

19

20 STEVEN RENDEROS, VALERIA THAIS
   SUÁREZ ROJAS, REYNA MALDONADO,
21 LISA KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST FUND,
22
         Plaintiffs,
23
      v.
24
   CLEARVIEW AI, INC., and DOES 1-10,
25
        Defendants.
26
27
28

Case No.: RG21091138

**NOTICE OF MOTION AND MOTION FOR DINESH MCCOY TO APPEAR AS COUNSEL *PRO HAC VICE***

**ASSIGNED FOR ALL PURPOSES TO:**
The Honorable Winifred Y. Smith
Department 21

**Date:**       May 14, 2021
**Time:**       10:00 a.m.

**Reservation ID:**   R-2249844

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on May 14, 2021 at 10:00 a.m., or as soon thereafter as

3    counsel may be heard, in Department 21 of the Alameda County Superior Court, Administration

4    Building, located at the Fourth Floor of 1221 Oak Street, Oakland California 94612, *Dinesh*

5    McCoy will and hereby does apply for an Order permitting him to appear as counsel *pro hac vice*

6    in this action on behalf of Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna

7    Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist Fund ("Plaintiffs"),

8    pursuant to Rule 9.40 of the California Rules of Court. This motion is based upon this Notice of

9    Motion and the attached Verified Application of Dinesh McCoy.

10

11   Dated: March 30, 2021                          Respectfully submitted,

12                                                  BRAUNHAGEY & BORDEN LLP

13

14                                                  By: _____

15                                                       Ellen V. Leonida

16                                                  Attorneys for Plaintiffs Steven Renderos,
                                                    Valeria Thais Suárez Rojas, Reyna Maldonado,
17                                                  Lisa Knox, Mijente Support Committee, and
                                                    Norcal Resist Fund

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR DINESH MCCOY TO APPEAR AS COUNSEL *PRO HAC VICE*

FILED BY FAX

ALAMEDA COUNTY

March 30, 2021

CLERK OF
THE SUPERIOR COURT
By Keisha Ghee, Deputy

CASE NUMBER:

**RG21091138**

Ellen V. Leonida, Esq. (SBN: 184194)
  leonida@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Athul K. Acharya, Esq. (SBN: 315923)
  acharya@braunhagey.com
Gunnar K. Martz, Esq. (SBN: 300852)
  martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

Sejal R. Zota (*pro hac vice* application pending)
  sejal@justfutureslaw.org
Dinesh McCoy (*pro hac vice* application pending)
  dinesh@justfutureslaw.org
JUST FUTURES LAW
95 Washington Street, Suite 104-149
Canton, MA 02021
Telephone: (919) 698-5015

Attorneys for PLAINTIFFS STEVEN
RENDEROS, VALERIA THAIS SUÁREZ
ROJAS, REYNA MALDONADO, LISA
KNOX, MIJENTE SUPPORT
COMMITTEE, and NORCAL RESIST
FUND

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| STEVEN RENDEROS, VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, and NORCAL RESIST FUND,<br><br>Plaintiffs,<br><br>v.<br><br>CLEARVIEW AI, INC., and DOES 1-10,<br><br>Defendants. | Case No.: RG21091138<br><br>**VERIFIED APPLICATION OF DINESH MCCOY TO APPEAR AS COUNSEL *PRO HAC VICE***<br><br>**ASSIGNED FOR ALL PURPOSES TO:**<br>The Honorable Winifred Y. Smith<br>Department 21<br><br>**Date:** May 14, 2021<br>**Time:** 10:00 a.m.<br><br>**Reservation ID:** R-2249844 |

1    Pursuant to California Rules of Court, Rule 9.40, I, Dinesh McCoy, apply for admission to

2    practice before this Court *pro hac vice* in order to represent Plaintiffs Steven Renderos, Valeria

3    Thais Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist

4    Fund ("Plaintiffs") in the above-captioned matter. In support of this application, I state the

5    following:

6        1.    I am a resident of the District of Columbia. My residence address is:

7            613 L St. NE
8            Washington, DC 20002

9    My office address is:

10           JUST FUTURES LAW
             95 Washington Street, Suite 104-149
11           Canton, MA 02021

12       I am not a resident of California, nor am I regularly engaged in the practice of law in

13   California. I have been retained by Plaintiffs in this action.

14       2.    I was admitted to practice in the District of Columbia on December 29, 2020. I am

15   currently a member in good standing in the District of Columbia.

16       3.    I have not been suspended or disbarred in any court.

17       4.    In the past two years, I have not applied to appear *pro hac vice* in any other

18   California actions.

19       5.    Ellen V. Leonida, Esq. (SBN: 184194), Matthew Borden, Esq. (SBN: 214323), J.

20   Noah Hagey, Esq. (SBN: 262331), Athul K. Acharya, Esq. (SBN: 315923), and Gunnar K. Martz,

21   Esq. (SBN: 300852) are counsel of record on behalf of Plaintiffs in this action. Their address and

22   telephone numbers are:

23           Ellen V. Leonida, Esq. (SBN: 184194)
             Matthew Borden, Esq. (SBN: 214323)
24           J. Noah Hagey, Esq. (SBN: 262331)
             Athul K. Acharya, Esq. (SBN: 315923)
25           Gunnar K. Martz, Esq. (SBN: 300852)
             BRAUNHAGEY & BORDEN LLP
26           351 California Street, Tenth Floor
             San Francisco, CA 94104
27           Telephone: (415) 599-0210

28

VERIFIED APPLICATION OF DINESH MCCOY TO APPEAR AS COUNSEL *PRO HAC VICE*

1        6.        Pursuant to California Rules of Court, Rule 9.40(e), I have served copies of this

2  application and supporting documents to the State Bar of California with the required $50 fee for

3  this application.

4

5  Dated: March 10, 2021                    By: _____

6                                     Dinesh McCoy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                     Case No.: RG21091138

VERIFIED APPLICATION OF DINESH MCCOY TO APPEAR AS COUNSEL *PRO HAC VICE*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I am the applicant for admission *pro hac vice* and I have read the foregoing application and know its contents. The matters stated in the application are true based on my own knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 23, 2021 at Washington, District of Columbia.

Dinesh McCoy

1  Ellen V. Leonida, Esq. (SBN: 184194)
    leonida@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
3  J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
4  Athul K. Acharya, Esq. (SBN: 315923)
    acharya@braunhagey.com
5  Gunnar K. Martz, Esq. (SBN: 300852)
    martz@braunhagey.com
6  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
7  San Francisco, CA 94104
   Telephone: (415) 599-0210
8  Facsimile: (415) 599-0210

9  Sejal R. Zota (*pro hac vice* application pending)
    sejal@justfutureslaw.org
10 Dinesh McCoy (*pro hac vice* application pending)
    dinesh@justfutureslaw.org
11 JUST FUTURES LAW
   95 Washington Street, Suite 104-149
12 Canton, MA 02021
   Telephone: (919) 698-5015
13
14 Attorneys for PLAINTIFFS STEVEN
   RENDEROS, VALERIA THAIS SUÁREZ
   ROJAS, REYNA MALDONADO, LISA
15 KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST
16 FUND

FILED BY FAX
ALAMEDA COUNTY

March 30, 2021

CLERK OF
THE SUPERIOR COURT
By Keisha Ghee, Deputy

CASE NUMBER:

RG21091138

17      **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18             **COUNTY OF ALAMEDA**

19

20 STEVEN RENDEROS, VALERIA THAIS
   SUÁREZ ROJAS, REYNA MALDONADO,
21 LISA KNOX, MIJENTE SUPPORT
   COMMITTEE, and NORCAL RESIST FUND,
22
           Plaintiffs,
23
     v.
24
   CLEARVIEW AI, INC., and DOES 1-10,
25
         Defendants.
26

27

28

Case No.: RG21091138

**VERIFIED APPLICATION OF SEJAL R. ZOTA TO APPEAR AS COUNSEL *PRO HAC VICE***

**ASSIGNED FOR ALL PURPOSES TO:**
The Honorable Winifred Y. Smith
Department 21

**Date:**       May 14, 2021
**Time:**      10:00 a.m.

**Reservation ID:**  R-2249846

1        Pursuant to California Rules of Court, Rule 9.40, I, Sejal R. Zota, apply for admission to

2    practice before this Court *pro hac vice* in order to represent Plaintiffs Steven Renderos, Valeria

3    Thais Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee, and Norcal Resist

4    Fund ("Plaintiffs") in the above-captioned matter. In support of this application, I state the

5    following:

6        1.    I am a resident of Durham, North Carolina. My residence address is:

7        54 Beverly Drive
        Durham, NC 27707
8

9    My office address is:

10        JUST FUTURES LAW
        95 Washington Street, Suite 104-149
11        Canton, MA 02021

12        I am not a resident of California, nor am I regularly engaged in the practice of law in

13    California. I have been retained by Plaintiffs in this action.

14        2.    I was admitted to practice in the state of North Carolina on July 13, 2007; the state

15    of New York on March 7, 2001; the U.S. Supreme Court on November 28, 2016; the U.S. Court of

16    Appeals for the First Circuit on April 8, 2015; the U.S. Court of Appeals for the Second Circuit on

17    September 11, 2019; the U.S. Court of Appeals for the Third Circuit on January 14, 2004; the U.S.

18    Court of Appeals for the Fourth Circuit on December 11, 2012; the U.S. Court of Appeals for the

19    Sixth Circuit on May 6, 2015; the U.S. Court of Appeals for the Seventh Circuit on March 10,

20    2017; the U.S. Court of Appeals for the Ninth Circuit on November 7, 2013; the U.S. Court of

21    Appeals for the Tenth Circuit on September 30, 2011; the U.S. Court of Appeals for the Eleventh

22    Circuit on or around October 8, 2014; and the U.S. District Court for the Southern District of New

23    York on August 26, 2003. I am currently a member in good standing in such courts.

24        3.    I have not been suspended or disbarred in any court.

25        4.    In the past two years, I have not applied to appear *pro hac vice* in any other

26    California actions.

27        5.    Ellen V. Leonida, Esq. (SBN: 184194), Matthew Borden, Esq. (SBN: 214323), J.

28    Noah Hagey, Esq. (SBN: 262331), Athul K. Acharya, Esq. (SBN: 315923), and Gunnar K. Martz,

1  Esq. (SBN: 300852) are counsel of record on behalf of Plaintiffs in this action. Their address and

2  telephone numbers are:

3          Ellen V. Leonida, Esq. (SBN: 184194)
           Matthew Borden, Esq. (SBN: 214323)
4          J. Noah Hagey, Esq. (SBN: 262331)
           Athul K. Acharya, Esq. (SBN: 315923)
5          Gunnar K. Martz, Esq. (SBN: 300852)
           BRAUNHAGEY & BORDEN LLP
6          351 California Street, Tenth Floor
           San Francisco, CA 94104
7          Telephone: (415) 599-0210

8          6.       Pursuant to California Rules of Court, Rule 9.40(e), I have served copies of this
9
   application and supporting documents to the State Bar of California with the required $50 fee for
10
   this application.
11

12
   Dated: March 10, 2021                       By:    _____
13                                                     Sejal R. Zota

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2      I am the applicant for admission *pro hac vice* and I have read the foregoing application and

3  know its contents. The matters stated in the application are true based on my own knowledge. I

4  declare under penalty of perjury under the laws of the State of California that the foregoing is true

5  and correct.

6      Executed on March 23, 2021 at Durham, North Carolina.

7

8

9

_____

10     Sejal R. Zota

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28